IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIS BAIRD, # K-81582, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-cv-376-MJR |
| ) | |
| MARCUS HODGE, TREADWAY, ) | |
| LT. STAFFORD, OFFICER HARPER, ) | |
| JEFFREY STRUBHART, ) | |
| MICHAEL R. MAUS, ) | |
| ROBERT L. BROWN, NURSE DARNOLD, ) | |
| JOHN DOE #1, JOHN DOE #2, ) | |
| KATHY DIANE MUSGRAVE, ) | |
| SANDY BURKE, and JANA K. CARIE, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**REAGAN, District Judge:**

This matter is now before the Court for review of Plaintiff's civil rights complaint (Doc. 7) pursuant to 28 U.S.C. § 1915A. In addition, the Court shall address two motions filed by Plaintiff, which seek to add a Defendant (Doc. 10) and another claim (Doc. 12) to this action. Plaintiff, who is incarcerated at Lawrence Correctional Center ("Lawrence"), filed the 42-page complaint in response to this Court's order (Doc. 3) of April 22, 2013. That order also referred Plaintiff's motion (Doc. 1) for injunctive relief to United States Magistrate Judge Stephen C. Williams, who has set the matter for hearing. Plaintiff is seeking an order requiring Defendants to place him in protective custody because he was attacked by a fellow inmate and has received additional threats. He also requests damages for violations of his constitutional rights.

In his complaint, Plaintiff adds several Defendants as well as some additional claims. His allegations are as follows:

Plaintiff was transferred from Hill Correctional Center ("Hill") to Lawrence on July 11, 2012, after he was found guilty of possessing contraband at Hill (Doc. 7, p. 12).[1] One month before the transfer, Plaintiff had been confronted by inmates at Hill who learned he had formerly been employed as an undercover police officer. Plaintiff was then separated from other inmates for his safety, and he requested protective custody ("PC"). When Plaintiff was brought to Lawrence, two other Hill inmates who knew of his past (one of whom was a Latino gang member) were transferred with him. This put him in fear that they would tell other Lawrence inmates about his police background, thus placing him in danger of assault.

Between July 11 and 23, 2012, Plaintiff advised several Lawrence staff including Defendants Strubhart (counselor) and Burke (social worker) of the danger he faced because of the former Hill inmates, who were housed in the same unit as Plaintiff (Doc. 7, pp. 24-25). He requested PC or "some type of protection" (Doc. 7, pp. 34-35). However, Defendant John Doe #1 (segregation placement officer), put him in a cell with inmate Acosta, who was a Spanish Lords gang member incarcerated for attempted murder of a policeman, and who had been shot by police (Doc. 7, pp. 13, 35). On July 14, 2012, Plaintiff wrote to Internal Affairs requesting PC (Doc. 7, p. 18). He met with Defendant Burke and requested protection on or about July 19, 2013 (Doc. 7, p. 37). However, neither Defendant Burke nor Defendant Strubhart took any action to protect Plaintiff.

In late July 2012, Plaintiff wrote to Defendant Hodge (Lawrence Warden) for the first time asking for PC because of his fear that the former Hill inmates would tell fellow gang members about Plaintiff's police history (Doc. 7, pp. 13). Plaintiff wrote several other requests for PC to Defendant Hodge over the ensuing months, to no avail (Doc. 7, pp. 9-10, 13-16).

---

[1] Ironically, this disciplinary report that was the basis for Plaintiff's transfer was expunged in April 2013 (Doc. 7-2, pp. 8-9).

In August 2012, Plaintiff was interviewed by Defendant Harper (Internal Affairs officer) about his PC request, but was returned to the same cell with inmate Acosta. Defendant Harper told Plaintiff he needed to verify Plaintiff's former employment, but would not allow Plaintiff to obtain his documentation from his cell (Doc. 7, pp. 21-22). Also in August 2012, Plaintiff spoke personally to Defendant Stafford (head of Internal Affairs) about getting protection, and he showed Defendant Stafford the documents proving he had been a police officer. However, Defendant Stafford failed to take any steps to protect Plaintiff (Doc. 7, pp. 18-19).

On March 20, 2013, Plaintiff was assaulted by a different cellmate (Meeks, a member of the Gangster Disciples street gang), who beat him with a plastic stool, held him down, and choked him. Inmate Meeks had been told by another inmate that Plaintiff was an ex-police officer (Doc. 7, pp. 14-15). Plaintiff suffered injuries to his head and neck, cuts, and a broken nose (Doc. 7, pp. 23, 26).

The day after the attack, Plaintiff wrote to Internal Affairs requesting documentation of his injuries, and again asking for PC (Doc. 7, p. 19). Defendant Stafford did not respond. Plaintiff also sent another emergency grievance to Defendant Hodge requesting PC. Defendant Hodge ruled it was not an emergency and instructed Plaintiff to file the request through regular channels. Plaintiff was later placed with other inmates who he felt posed a danger to him, so Plaintiff declared hunger strikes in order to be separated from them. The PC request was never granted.

The attack on Plaintiff also resulted in disciplinary action against him. Defendant Maus, who observed the assault on Plaintiff by inmate Meeks, wrote a disciplinary ticket stating (falsely, according to Plaintiff) that Plaintiff attempted to punch Meeks while Meeks was holding

Plaintiff down (Doc. 7, p. 26). One month earlier, Plaintiff had filed a grievance against Defendant Maus. He asserts that Defendant Maus lied about the facts of the assault in order to retaliate against him for this complaint (Doc. 7, pp. 26-27). Defendants Brown and Carie conducted the disciplinary hearing, and refused to allow Plaintiff to introduce documents he needed to present his defense (Doc. 7, pp. 28-30). Plaintiff also complains that the hearing committee was biased against him because it did not include a minority staff member as directed by IDOC policy (Doc. 7, p. 30). Plaintiff was found guilty and his discipline included the revocation of 15 days' good conduct credits. This disciplinary action was approved by Defendant Hodge, who denied Plaintiff's emergency grievance over the discipline (Doc. 7, pp. 16-17).

Following the March 20, 2013 attack, Plaintiff was seen by Defendant Nurse Darnold for medical treatment for his injuries (Doc. 7, p. 31). Despite his complaints of pain, she refused to give him anything for pain relief, and failed to give him a thorough examination (Doc. 7, p. 32). His broken nose went undetected and untreated for several days. Plaintiff had previously filed grievances against Defendant Darnold for unrelated matters, and he believes she deliberately rendered inadequate treatment in retaliation for Plaintiff's earlier complaints (Doc. 7, p. 31). Defendant Hodge denied Plaintiff's grievance over the lack of medical treatment (Doc. 7, p. 18).

In April 2013, Plaintiff gave several documents (including a police report and court transcript identifying Plaintiff as a police officer)[2] to Defendant Musgrave (law library supervisor) so she could make copies for him (Doc. 7, p. 32). He soon learned that Defendant Musgrave had "negligently" mailed copies of these documents to another inmate (Couch), when inmate Couch wrote Plaintiff a threatening letter and included the copies of Plaintiff's papers

---

[2] *See* Doc. 7-2, p. 17, and Doc. 7-3, p. 1.

(Doc. 7, pp. 15, 32, 34). Plaintiff wrote another emergency grievance to Defendant Hodge, requesting PC (Doc. 7, pp. 15-16). Defendant Hodge deemed the grievance non-emergency and nothing was done to protect Plaintiff. Plaintiff then sent his PC request to Defendant Strubhart (counselor), and wrote to Defendant Treadway (assistant warden) seeking PC (Doc. 7, pp. 23-26). Plaintiff also wrote Defendant Stafford another request for PC, which was personally delivered by the segregation lieutenant (Doc. 7, p. 20). Again, he got no response. Three days later, Plaintiff was placed by Defendant John Doe #2 (segregation placement officer) in a cell with an inmate (Askew) who had just come from the housing unit where inmate Couch lived (Doc. 7, pp. 16, 36). Inmate Askew also had a history of assaulting other inmates and guards (Doc. 7, p. 36). Plaintiff declared a hunger strike in order to be moved (Doc. 7, pp. 16, 37).

On May 2, 2013, Plaintiff saw inmate Couch talking to other prisoners while they were in the law library, and the group kept looking over at Plaintiff. Their actions indicated to Plaintiff that inmate Couch was telling them about Plaintiff being a former policeman (Doc. 7, p. 34). These events continue to put Plaintiff in fear for his safety while he remains housed with other inmates.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal claims:

**Count 1:** Against Defendants Hodge, Treadway, Stafford, Harper, Strubhart, and Burke, for deliberate indifference to Plaintiff's safety and failure to protect him from assault by a fellow inmate;

**Count 2:** Against Defendant Maus, for writing a false disciplinary report in retaliation for Plaintiff's grievance against him;

**Count 3:** Against Defendant Darnold for deliberate indifference to Plaintiff's need for pain relief and medical treatment following the assault on him; and

**Count 4:** Against Defendant Darnold for failing to give Plaintiff a proper medical examination in retaliation for Plaintiff's grievance against her.

However, some claims and Defendants shall be dismissed, because the complaint fails to describe further constitutional violations upon which relief may be granted in this action. The claims to be dismissed are: **Count 5**, against Defendant Musgrave for negligently mailing Plaintiff's documents to inmate Couch; and **Count 6**, against Defendants Maus, Brown, Carie, and Hodge for deprivation of a liberty interest without due process (the loss of 15 days good conduct credits).

**Dismissal of Count 5**

Plaintiff's account of Defendant Musgrave's actions show that at most, she was negligent in mailing his documents to the wrong inmate. He states she made this error through carelessness and/or negligence (Doc. 7, pp. 32, 34). Nothing in the complaint indicates that Defendant Musgrave purposely or intentionally informed inmate Couch that Plaintiff was a former police officer. A defendant can never be held liable under § 1983 for negligence. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995). Therefore, Count 5 and Defendant Musgrave shall be dismissed from this action without prejudice.

**Dismissal of Count 6**

The loss of 15 days of good conduct credit clearly lengthens Plaintiff's prison sentence, and does implicate a due process liberty interest. Plaintiff alleges that he was not afforded all the procedural protections he should have received during his disciplinary hearing.

*See Wolff v. McDonnell*, 418 U.S. 539 (1974) (inmate must be given advance written notice of the disciplinary charge, the right to appear before the hearing panel and present documentary evidence in his defense, the right to call witnesses if prison security allows, an impartial tribunal, and a written statement of the reasons for the discipline imposed).

However, Plaintiff may not seek damages or the restoration of his good conduct credits in this civil rights action. The proper method for challenging the revocation of good time credit is habeas corpus, but only after Plaintiff has exhausted his remedies through the Illinois state courts. *See, e.g., Heck v. Humphrey,* 512 U.S. 477, 480-81 (1994). The Illinois courts have recognized mandamus as an appropriate remedy to compel prison officials to award sentence credit to a prisoner. *See Turner-El v. West,* 811 N.E.2d 728, 733 (Ill. App. 2004) (citing *Taylor v. Franzen*, 417 N.E.2d 242, 247, *aff'd on reh'g*, 420 N.E.2d 1203 (Ill.App. 1981)). The State of Illinois must first be afforded an opportunity, in a mandamus action pursuant to 735 Illinois Compiled Statutes 5/14-101 *et seq.*, to consider the merits of Plaintiff's claim. Accordingly, Count 6 against Defendants Maus, Brown, Carie, and Hodge is dismissed without prejudice to Plaintiff bringing his claims in a properly filed habeas corpus action, **but only after he has exhausted his state court remedies**. Nothing herein shall be construed as an opinion on the merits of the potential habeas corpus claim.

**Defendants in Counts 1, 3, and 4**

Plaintiff states that Defendants John Doe #1 and John Doe #2 were the officers who placed him in a cell with two dangerous inmates: inmate Acosta in July 2012, and inmate Askew in April 2013. However, he does not allege that he notified either John Doe #1 or John Doe #2 of his safety concerns. The fact that Plaintiff conveyed his fears and PC requests to *other* Defendants does not suffice to impose liability on the John Doe Defendants for violating

Plaintiff's constitutional rights. In order to state a claim for deliberate indifference to Plaintiff's safety against any particular Defendant, the complaint must indicate that Plaintiff made that person aware of the risk he faced, but the Defendant acted, or failed to act, in disregard of that risk. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). Although Plaintiff states in connection with **Count 1** that he wrote or spoke with a number of Defendants to request protection, he makes no such allegation in reference to Defendants John Doe #1 or John Doe #2. Accordingly, they shall be dismissed from the action without prejudice.

Finally, Plaintiff faults Defendant Hodge for failing to order further medical treatment for him, in response to his grievance over the inadequate medical care rendered by Defendant Darnold **(Counts 3 and 4)**. While Plaintiff may proceed at this stage with his claims against Defendant Darnold, the complaint fails to state a claim against Defendant Hodge in connection with these counts. If an inmate is under the care of prison medical professionals, non-medical prison officials "will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). The complaint does not indicate that Defendant Hodge, as the prison warden, was himself a medical professional. "A layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference; it is just a form of failing to provide a gratuitous rescue service." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Further, there is no supervisory liability in a civil rights action, where the doctrine of *respondeat superior* does not apply. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). While Plaintiff may proceed with his claim against Defendant Hodge in Count 1, he fails to state a claim against Defendant Hodge in reference to the medical care claims in Counts 3

and 4.

**Pending Motions**

Plaintiff's motion for appointment of counsel, construed as a motion for recruitment of counsel (Doc. 9), and motion for production of documents (Doc. 11) shall be referred to United States Magistrate Judge Williams for further consideration.

Plaintiff's motion to add Defendant (Doc. 10) and motion to add claim (Doc. 12) are **DENIED**. In these two motions, Plaintiff states that Officer Henry intentionally destroyed Plaintiff's copy of the Adjustment Committee summary which he had prepared to submit as an exhibit and supporting evidence to the complaint (Exhibit No. 26, Doc. 7-3, p. 7). This occurred on May 6, 2013, while Plaintiff was preparing the documents he filed in this case on May 15, 2013. Plaintiff filed a grievance over this action but has not yet received any response (Doc. 10, p. 2). He now seeks to add a claim for interference with access to the courts, naming Officer Henry as the Defendant.

First and foremost, Officer Henry's actions have not impeded Plaintiff in the prosecution of this action, nor does it appear that they would result in any future impairment. At least part of the document in question is now filed of record (Doc. 12, p. 2). It also appears that a replacement of the destroyed pages, if needed, would be in the possession of Defendants and available through discovery. In the absence of a showing of actual substantial prejudice to specific litigation, Plaintiff cannot maintain a claim for denial of access to the courts. *See Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992), *cert. denied*, 506 U.S. 1062 (1993); *Howland v. Kilquist*, 833 F.2d 639, 642-43 (7th Cir. 1987).

Furthermore, this Court will not accept piecemeal amendments to the complaint, as Plaintiff has attempted to do with the motions at Docs. 10 and 12. Any proposed amended

complaint must comply with Federal Rule of Civil Procedure 15(a)(1) and Local Rule 15.1.  And finally, the document destroyed by Officer Henry relates to the revocation of 15 days of Plaintiff's good conduct credit.  As discussed above (Count 6), Plaintiff cannot pursue his claim for restoration of these credits in this civil rights action.

**Disposition**

COUNTS 5 and 6 are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.  Defendants **MUSGRAVE, BROWN, CARIE, JOHN DOE #1,** and **JOHN DOE #2** are **DISMISSED** from this action without prejudice.

Personal service on Defendant **HODGE** has already been ordered (Doc. 3).  In reference to **COUNTS 1, 2, 3, and 4** of the amended complaint, the Clerk of Court shall prepare for Defendants **TREADWAY, STAFFORD, HARPER, STRUBHART, BURKE, MAUS** and **DARNOLD**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint (Doc. 7), the Memorandum and Order at Doc. 3, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any

documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Plaintiff's motion for TRO or preliminary injunction (Doc. 1) as well as all pre-trial proceedings, have already been referred to United States Magistrate Judge **Stephen C. Williams** pursuant to Local Rule 72.1(a)(2) (Doc. 3).  The additional claims in **COUNTS 1, 2, 3, and 4** are likewise **REFERRED** to Judge Williams for pre-trial proceedings.

As previously ordered, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

**IT IS SO ORDERED.**

**DATED: May 29, 2013**

s/ MICHAEL J. REAGAN
United States District Judge