IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIS BAIRD, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| vs. | )   Case No.  13-cv-376-MJR-SCW |
| | ) |
| MARCUS HODGE, et al., | ) |
| | ) |
|        Defendants. | ) |

REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### I. Introduction

This case is before the Court on Plaintiff's Motion for Temporary Restraining Order or Preliminary Injunction (Doc. 1). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a). It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **DENY** Plaintiff's Motion for Temporary Restraining Order or Preliminary Injunction (Doc. 1).

### II. Findings of Fact

**A. Procedural Background**

On April 17, 2013, Plaintiff filed the instant Motion for Temporary Restraining Order or Preliminary Injunction (Doc. 1). Plaintiff's motion alleged that since his transfer to Lawrence Correctional Center his life has been in danger and he has sought protective custody, to no success,

because of his status as a former police officer (*Id.*). Plaintiff states that prior to being incarcerated, Plaintiff was a police officer for the Waukegan Police Department (*Id.*). Plaintiff is currently serving a twenty-five year sentence for home invasion and a three year sentence for aggravated criminal sexual abuse. His projected release date is in approximately five months (Doc. 3). Plaintiff allegedly has made numerous attempts to seek placement in protective custody due to his status as a former police officer (*Id.*). Plaintiff alleges that inmates at Lawrence Correctional Center have become aware of his former position which puts him in danger (*Id.*). Plaintiff points out that prior to being transferred to Lawrence, he was confronted by an Inmate Willis at Hill Correctional Center about his former position as a police officer (Doc. 1 at ¶¶ 2-3). Plaintiff was later transferred to Lawrence with Willis. Plaintiff filed numerous grievances upon arriving at Lawrence to be placed in protective custody, but he was refused (Doc. 3). On March 20, 2013, Plaintiff was attacked by his cellmate allegedly because his cellmate discovered that he was a former police officer (Doc. 1 at ¶ 4). Plaintiff also notes that another inmate, Stephen Couch, obtained his private legal mail which identified Plaintiff as a former police officer and Couch wrote him a threatening letter in response (*Id.* at ¶¶ 8-9).

Although Plaintiff initially filed this matter as a motion for preliminary injunction, Plaintiff had not properly commenced a cause of action as he failed to file a Complaint (Doc. 3). The Court instructed Plaintiff to file a Complaint regarding his allegations. However, due to the nature of his allegations, the Court scheduled the matter for an evidentiary hearing on his preliminary injunction and temporary restraining order motion (*Id.*). Plaintiff was given twenty-one days to file a proper Complaint and the U.S. Marshal Service was directed to effectuate service on Defendant Hodge as he is the warden at Lawrence Correctional Center and thus a proper party for injunctive purposes (*Id.*). The matter was referred to the undersigned for an evidentiary hearing.

Subsequently on May 13, 2013, Plaintiff filed his Complaint. His Complaint added

several more Defendants as well as additional allegations (Doc. 14). Plaintiff's Complaint alleged that while at Hill Correctional Center he was confronted by an inmate about his position as a former police officer (*Id.*). In response to this confrontation, Plaintiff requested protective custody. He was subsequently transferred to Lawrence Correctional Center with two inmates who knew his past position. Between July 11 and 23, 2012, he advised staff at Lawrence of the danger he faced because the two inmates from Hill were housed in his unit (*Id.*). He also requested protective custody. On July 14, 2012, Plaintiff wrote to internal affairs requesting protective custody because he was housed with an Inmate Acosta, a Spanish Lords gang member who was serving time for the attempted murder of a police officer (*Id.*). He met with Defendant Burke on July 19, 2013 and requested protective custody. He also wrote to Warden Hodge. In August he was interviewed by Internal Affairs Officer Harper, but Harper informed him that he needed to verify Plaintiff's former employment. Plaintiff was not granted protective custody status. Plaintiff was assaulted by his cellmate, Inmate Meeks, on March 20, 2013 (*Id.*). Inmate Meeks allegedly told Plaintiff that had been informed by another inmate that Plaintiff was a former police officer.

**B.     Evidentiary Hearing**

On June 6, 2013, the undersigned held an evidentiary hearing on Plaintiff's motion for preliminary injunction or temporary restraining order. The following is a recitation of the facts derived from that hearing.

Plaintiff testified that while at Hill Correctional Center, he was placed in segregation for making homemade alcohol and during his time in segregation the correctional officers mentioned that he was a former police officer. When Plaintiff was released from segregation, he was confronted by an Inmate Willis who told them he had overheard an officer say that Plaintiff was a former police officer. Plaintiff immediately informed officers on the yard and he was placed in his cell for thirty

days.   Plaintiff was then transferred to Lawrence.

While being transferred to Lawrence, Plaintiff was on the same transport as Inmate Willis and another Hispanic inmate.   Both inmates were placed in the same segregation wing at Lawrence as Plaintiff.   Upon his arrival at Lawrence, Plaintiff began writing letters to Internal Affairs and Warden Hodge to be placed in protective custody.   During his stay in segregation, Plaintiff was initially placed with an inmate who was a member of the Latin Kings and constantly talked about his hatred toward police.   He then was placed with an Inmate Acosta who was in prison for attempted murder of a police officer.   Although he was afraid that his cellmates would learn of his past as a police officer, nothing happened while he was housed with either inmate.   He was then moved to general population.

Upon being moved to general population, Plaintiff was placed with an Inmate Meeks.   Inmate Meeks and Plaintiff got along in their cell for thirty-five days.   On March 20, 2013, Inmate Meeks began asking Plaintiff about his past as a former police officer.   Plaintiff ignored Meek's questions and Meeks attacked Plaintiff with a stool and then attempted to choke Plaintiff.   Officers arrived at their cell and handcuffed both inmates.   Plaintiff was taken to the health care unit where a nurse, who Plaintiff alleges he has had disagreements with in the past and who he has written grievances against, reviewed Plaintiff's injuries.   Plaintiff indicated he had an injured head and neck, but Nurse did not note any injuries (Exhibit 37).   The medical records indicate that Plaintiff had full range of motion of his neck (*Id.*).   Plaintiff indicates that this is a lie because he has a joint condition and has a documented medical history showing that he does not have full range of motion in his neck.

Plaintiff was then placed in segregation and was found guilty of the offense of fighting.   Officer Maus, who was present during the altercation with Inmate Meeks, testified that he observed Inmate Meeks on top of Plaintiff holding him down and that Plaintiff was trying to strike Meeks with

a closed fist (Exhibit 39).   Plaintiff received one month in segregation and revocation of 15 days good time credit (*Id.*).

Plaintiff alleges he then wrote an emergency grievance to Warden Hodge and to Internal Affairs both to document his injuries from the altercation and to protect him from other inmates.  Plaintiff testified that neither responded to his grievances.  Plaintiff next received a letter from an Inmate Couch, who he knew from seeing each other in the library.   Couch's letter to Plaintiff indicated that he had received some of Plaintiff's privileged legal mail by mistake and found out from reading the mail that Plaintiff was a former undercover cop (Exhibit 40).   Couch's letter informed Plaintiff that he would not tell anyone about Plaintiff's former position, but asked for Plaintiff's help with Couch's own civil rights case (*Id.*).   Plaintiff testified that he has had several other encounters with Couch since he received the letter.   He saw Couch and other inmates staring at him in the law library and the day before the hearing he met Couch in the library line at which time Couch asked Plaintiff if they knew each other.

Plaintiff testified on cross-examination that while the issue of him being a former police officer had come up while he was at Hill, he did not have any safety concerns because the inmates knew him and he denied that he was a former police officer.   Further, he acknowledged that he never had problems with his other two cellmates and did not have troubles with Inmate Meeks for the initial thirty-five days they were housed together.  Plaintiff also acknowledged that he never informed any staff that he felt Inmate Meeks was a security concern.   Plaintiff also noted that he has not had any problems with his current cellmate, Washington Green.   Plaintiff noted in the last several days that Green has talked more about police officers and that Plaintiff worries that Green might now know about his past, but admits that he is paranoid about people discovering that he is a former police officer.   Plaintiff also informed the Court that both Green and he are of the same religion, the

Moorish Science Temple of America, and that he wants to stay celled with Green because of that connection.

At the hearing, Correctional Officer Harper also testified. Officer Harper is an intelligence officer who keeps track of security groups in the prison and also investigates safety concerns of inmates. Harper interviewed Plaintiff on August 22, 2012 and Plaintiff claimed that he was a former police officer. He also interviewed Inmate Willis who informed him he had overheard officers at Hill talking about how Plaintiff had been a former police officer, but that Willis considered Plaintiff a friend. Harper concluded that there was no specific threat to Plaintiff's safety. He also stated that he did not receive any further letters from Plaintiff, including letters allegedly sent on March 20 and 21, 2013 or a letter delivered by a Lt. Dallas. Harper did acknowledge that there are other officers in the intelligence unit who might have received other requests by Plaintiff.

Lt. Stafford, supervisor for Internal Affairs, also testified about Plaintiff's request for protective custody. Lt. Stafford indicated that he had not received a request from Plaintiff's counselor for protective custody. Plaintiff's grievance from April 5, 2013, includes a note from his counselor dated April 24, 2013 indicating that Plaintiff's request for protective custody has been submitted to Internal Affairs (Doc. 7 Ex. 10). Lt. Stafford testified that he was not aware of the request, but did note that requests or directives can be handled by either him or one of the other officers in his unit. Lt. Stafford also noted that inmates are not allowed to mingle on their gallery and that all inmate interactions, including interactions on the yard, gym, chapel, law library, school, and showers, are monitored by correctional officers. He did acknowledge, however, that fights have occurred in the past in each of those places of interaction.

### III. Conclusions of Law

**A.** **Preliminary Injunction Standard**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, **520 U.S. 968, 972 (1997).** *Accord Winter v. Natural Res. Def. Council, Inc.*, **555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right").** To win a preliminary injunction, a plaintiff must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without the injunction, (3) that the harm he would suffer is greater than the harm a preliminary injunction would inflict on defendants, and (4) that the injunction is in the public interest. **Judge *v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010) (citing *Winter*, 555 U.S. at 20).** The "considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge*, **612 F.3d at 546**.

In the context of prisoner litigation, there are further restrictions on courts' remedial power. The scope of the court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act (PLRA). *Westefer v. Neal*, **682 F.3d 679, 683 (7th Cir. 2012)**. Under the PLRA, preliminary injunction relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." **18 U.S.C. §3626(a)(2).** *See also Westefer*, **682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions:  prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).**

The Seventh Circuit has described injunctions like the one sought here, where an injunction would require an affirmative act by the defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," since they require the court to command a defendant to take a particular action. *Id.* (citing *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978)). *See also W.A. Mack, Inc. v. Gen. Motors Corp.,* 260 F.2d 886, 890 (7th Cir. 1958) ("A preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in a final decree.").

**B.     Analysis**

Plaintiff seeks an injunction requiring Warden Hodge to either place him in protective custody or transfer him to another facility. Plaintiff argues that is the only way that he will be safe from inmates at Lawrence, all of whom he fears know of his past as a police officer. Defendant Hodge, however, argues that the request for transfer is overly broad and violates the PLRA as it would be highly intrusive to the inner workings of the prison system and would tread upon IDOC's authority over the running of their institution.

The undersigned agrees with Defendant, that an injunction requiring Plaintiff to be transferred to another facility would violate the PLRA as it is overly broad and intrusive upon the administration of the prison. Further, as to Plaintiff's request for an injunction requiring him to be placed in protective custody, the undersigned finds that Plaintiff has not met his burden of showing that he would suffer irreparable harm if he is not placed in protective custody. While Plaintiff expresses a general fear that all inmates now know of his past as a police officer, he himself acknowledges that he is paranoid about his fellow inmates finding out about his past. There is no evidence in the record that his fellow inmates know of his former career. In fact, he has only offered

evidence that Inmates Meeks and Couch have actual knowledge of his past and acted upon that knowledge. As to Inmate Meeks, the undersigned has been informed that he is on parole and no longer housed at Lawrence. Thus, Plaintiff faces no threat of future harm from Inmate Meeks. Plaintiff also testified that Inmate Couch wrote Plaintiff a threatening letter. While the undersigned acknowledges that Couch's letter could be viewed as a threat as it warns Plaintiff of the dangers of other inmates learning his former occupation and asks for help in Couch's own case, the Court finds that there is no evidence in the record or the letter to suggest that Inmate Couch will act on those threats. Thus, there is no evidence that Plaintiff faces any harm by not being placed in protective custody.

Plaintiff has also offered evidence that inmates have been attacked by other inmates in the common areas of the prison, even when those areas are overseen by guards. However, Plaintiff has failed to offer any specific threat he faces from any inmate. He acknowledged that the only problem he had was with Inmate Meeks and he is no longer at the prison. Further, Plaintiff has indicated that he gets along with his current cellmate as they share the same religion. Plaintiff did testify that he was concerned other unnamed inmates knew of his past as a police officer because of their mentioning of police in general conversation, but he acknowledges that this may just be paranoia, which Plaintiff admits that he has concerning inmates finding out his past. Plaintiff, however, has failed to offer any evidence of a specific threat to him from any of these inmates. Thus, the Court finds that his fears of being attacked are speculative as Plaintiff has not shown that he is likely to suffer another attack from an inmate because of his past as a police officer. Accordingly, the undersigned finds that Plaintiff is not entitled to a preliminary injunction because he has not shown that he is likely to suffer irreparable harm if not placed in protective custody.

The undersigned is perplexed, however, at the fact that Defendant's two witnesses did

not have knowledge of Plaintiff's current requests for protective custody. Plaintiff testified that he sought protective custody since the incident with Meeks and Couch, but has not received any response from Lawrence. Plaintiff also offered a grievance into evidence which he submitted on April 5, 2013, which indicates that his request for protective custody was currently before Internal Affairs (Doc. 7 at Ex. 10). Plaintiff's counselor responded to the grievance on April 25, 2013 and informed Plaintiff that his Clinical Services Supervisor had submitted his request for protective custody to Internal Affairs for review (*Id.*). However, neither Lt. Stafford nor Officer Harper was aware of the request from clinical services, nor were they aware of the grievance. It unclear to the undersigned whether Plaintiff's current concerns that inmates in the prison have knowledge of his status as a former police officer is currently being investigated. Thus, there is some concern that there is a general knowledge among the prisoners of Plaintiff's former occupation, but the evidence is too speculative that such knowledge, if it exists, puts Plaintiff in danger if he is not moved to protective custody. As Plaintiff pointed out himself, there was some knowledge of his past occupation by inmates at Hill Correctional Center and yet Plaintiff never had any safety concerns while at Hill. There is no evidence that the same knowledge poses a threat to him now that he is at Lawrence. Thus, the undersigned finds that Plaintiff is not entitled to a preliminary injunction.

## IV.    Conclusion

Accordingly, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff is not entitled to the injunction he seeks as he his concerns of future harm if not placed in protective custody is too speculative. Thus, the undersigned **RECOMMENDS** that the Court **DENY** Plaintiff's motion for preliminary injunction (Doc. 1).

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely

objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before **July 8, 2013**.

**IT IS SO ORDERED**.
DATED: June 17, 2013.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge