IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIS BAIRD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MARCUS HODGE, TREADWAY, LT. | ) Case No. 13–cv–0376–MJR–SCW |
| STAFFORD, OFFICER HARPER, | ) |
| JEREMY STRUBHART, MICHAEL R. | ) |
| MAUS, NURSE DARNOLD, and SANDY | ) |
| BURKE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**REAGAN, District Judge:**

Before he filed a complaint in this § 1983 lawsuit, *pro se* Plaintiff Willis Baird filed a motion

for temporary restraining order / preliminary injunction (Doc. 1) so that he would be placed into

protective custody or transferred from Lawrence Correctional Center. Upon threshold review, and

pursuant to 28 U.S.C. § 636, Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a), the

undersigned referred the motion to Magistrate Judge Stephen C. Williams for an evidentiary hearing

and Report and Recommendation (R&R). Judge Williams held a hearing in June 2013, and that

month submitted an R&R recommending denial of injunctive relief. Plaintiff filed objections to the

R&R in July 2013, and those objections are ripe for ruling.

For the reasons articulated below, the undersigned district judge **ADOPTS** Judge Williams'

R&R **(Doc. 33)** and **DENIES** Plaintiff's motion for injunctive relief **(Doc. 1).**

### PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff, a former police officer, is currently incarcerated at Lawrence Correctional Center in

the Illinois Department of Corrections ("IDOC"). As pertinent to the instant motion for injunctive

relief, Plaintiff has made allegations that several officials at Lawrence violated (and continue to violate) his Eighth Amendment rights by failing to protect him from inmates at Lawrence.

According to Plaintiff, his problems began at Hill Correctional Center, where he was incarcerated before his transfer to Lawrence. At Hill (on June 11, 2012), Plaintiff was approached by inmates on the yard about the fact he is a former police officer. About a month later, officials transferred Plaintiff—along with two inmates who knew about his former profession—to Lawrence. On his arrival at Lawrence (and ever since), Plaintiff told staff he is an ex-police officer, that two other inmates knew he was a former officer, and that he needed protective custody. While at Lawrence, he was attacked by Inmate Meeks (one of his cellmates) and, on two other occasions, placed in cells with (respectively) an inmate who had shot a police officer and one who had assaulted a corrections officer. Plaintiff also received a letter from another inmate (Couch) containing the following phrases: "I hate undercover cops" and "Someone might kill you."

Plaintiff moved to enjoin prison officials to either transfer him away from Lawrence or, alternatively, to place him in protective custody. Finding that an injunction requiring a transfer would improperly intrude upon the discretion of prison officials, that Plaintiff did not show he would suffer irreparable harm were he not placed in protective custody, and that Plaintiff's fears were too generalized and speculative to necessitate an injunction, Magistrate Judge Williams recommends denying Plaintiff's motion.

## LEGAL STANDARDS

### A. *Standard of Review*

Where, as here, timely objections are filed, this Court must undertake a *de novo* review of a Report and Recommendation. **28 U.S.C. §§ 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b);** *Govas v. Chalmers*, **965 F.2d 298, 301 (7th Cir. 1992);** *Harper v. City of Chi. Heights*, **824 F.Supp. 786, 788 (N.D. Ill. 1993).** The Court "may accept, reject, or modify the magistrate

judge's recommended decision." *Harper*, **824 F.Supp. at 788.** In making the determination, the Court must examine all the evidence in the record and give fresh consideration to those issues to which specific objections have been made. *Id.* The Court reviews *de novo* only the portions of the report or specific proposed findings or recommendations to which objection is made. **28 U.S.C. § 636(b)(1)(C).**

A *de novo* determination, however, is not the same as a *de novo* hearing. *Goffman v. Gross*, **59 F.3d 668, 671 (7th Cir. 1995).** If, following a review of the record, a district court is satisfied with the magistrate judge's findings and recommendation, it may (in its discretion) treat those findings and recommendations as its own. *Id.* **(citing** *U.S. v. Raddatz*, **447 U.S. 667, 675 (1980)).**

Plaintiff makes sixteen overlapping objections to Magistrate Judge Williams' R&R. Before turning to those objections, the substantive legal standards warrant review.

### B. *Eighth Amendment Failure to Protect*

The Eighth Amendment's prohibition against cruel and unusual punishments applies to the states through the Fourteenth Amendment's Due Process Clause. *Gillis v. Litscher*, **468 F.3d 488, 491 (7th Cir. 2006) (citing** *Robinson v. California*, **370 U.S. 660 (1962)).** To prevail on an Eighth Amendment claim, a plaintiff must show that prison officials imposed conditions which denied him the minimal civilized measure of life's necessities. *Jaros v. Illinois Dep't of Corr.*, **684 F.3d 667, 670 (7th Cir. 2012).** Part of a prison official's duty under the Eighth Amendment is taking "reasonable measures to guarantee the safety of inmates." *Santiago v. Walls*, **599 F.3d 749, 758 (7th Cir. 2010) (quoting** *Farmer v. Brennan*, **511 U.S. 825, 832 (1994) (internal citation and quotation marks omitted)).**

More specifically, officials have a duty to protect prisoners from violence at the hands of other prisoners. *Pinkston v. Madry*, **440 F.3d 879, 889 (7th Cir. 2006)**. To prevail on a claim that prison officials failed to protect him from a known risk of attack, a plaintiff must show (1) the

official's denial of his request for protective custody posed a substantial risk of serious harm and (2) the official acted with deliberate indifference to that risk. *See Farmer*, **511 U.S. at 834.** *See also Dale v. Poston*, **548 F.3d 563, 569 (7th Cir. 2008) ("[A]n inmate has no claim unless the official knows of and disregards a substantial risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").**

Damages for a deliberate indifference claim cannot be predicated merely on knowledge of general risks of violence, *Weiss v. Cooley*, **230 F.3d 1027, 1032 (7th Cir. 2000)**, or fear of an unrealized attack, *see Babcock v. White*, **102 F.3d 267, 270 (7th Cir. 1996).** But an inmate may seek injunctive relief to prevent a substantial risk of serious injury from ripening into actual harm. *Farmer*, **511 U.S. at 845.** If an official has enough information to know a specific threat exists as to a particular inmate (or an identifiable group of inmates with plaintiff's characteristics), injunctive relief is a proper remedy if that official ignores the threat. *Guzman v. Sheahan*, **495 F.3d 852, 857–58 (7th Cir. 2007);** *Walsh v. Mellas*, **837 F.2d 789, 797 (7th Cir. 1988).** *See also Weiss*, **230 F.3d at 1032 ("Sometimes the heightened risk of which the guards were aware comes about because of their knowledge of the victim's characteristics, not the assailant's.").**

## C. Preliminary Injunction Standard

The purpose of a preliminary injunction is to preserve the status quo until the merits of a case may be resolved. *Indiana Civ. Liberties Union v. O'Bannon*, **259 F.3d 766, 770 (7th Cir. 2001).** *Accord Texas v. Camenisch*, **451 U.S. 390, 395 (1981) ("the purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.").** A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, **520 U.S. 968, 972 (1997).** *Accord Winter v. Natural Res. Def. Council, Inc.*, **555**

**U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right");** *Girl Scouts of Manitou Cnty., Inc. v. Girl Scouts of USA, Inc.*, **549 F.3d 1079, 1085 (7th Cir. 2008) ("[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it") (internal quotation marks omitted).**

To secure a preliminary injunction, a movant must show (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without the injunction, (3) the harm he would suffer is greater than the harm that the preliminary injunction would inflict on the defendants, and (4) the injunction is in the public interest. *Judge v. Quinn,* **612 F.3d 537, 546 (7th Cir. 2010) (citing** *Winter,* **555 U.S. at 20).** The considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be merited. *Judge,* **612 F.3d at 546.** Not every conceivable injury entitles a litigant to a preliminary injunction—speculative injuries do not trigger the "extraordinary remedy." *E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, **414 F.3d 700, 704 (7th Cir. 2005).** *Accord Winter,* **555 U.S. at 22 (rejecting the Ninth Circuit's standard that preliminary injunctive relief could be triggered by the mere possibility of irreparable harm).**

The Prison Litigation Reform Act (PLRA) narrows federal courts' power to enter a preliminary injunction against prison officials. Any preliminary relief must "be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." **18 U.S.C. § 3626(a)(2).**

### ANALYSIS

Of Plaintiff's sixteen enumerated objections, numbers fifteen and sixteen—in which Plaintiff objects to the mere mention of his criminal history—are the most plainly meritless. Judge Williams'

analysis depended in no part on Plaintiff's prior crimes, and mentioning them to contextualize this case could not possibly be prejudicial to either Plaintiff's motion or to his case.

Plaintiff's fourteen remaining objections target the factual and legal bases for Judge Williams' ultimate recommendation.  Plaintiff raises the following issues:

1. He did not know (or know of) inmate Couch—who sent him a letter saying "I hate undercover cops" and "someone might kill you"—until *after* receiving a letter from Couch;

2. Judge Williams' failed to mention with specificity the contents of Couch's letter;

3. Plaintiff did, in fact, have safety concerns at Hill Correctional Center (where he was formerly incarcerated);

4. Plaintiff's August 2012 notification of correctional officers that *all* inmates were a security concern because they may have knowledge of his former profession contradicts Judge Williams' finding that he did not notify staff that Inmate Meeks—who subsequently assaulted Plaintiff—was a danger to Plaintiff;

5. Plaintiff is not necessarily safe now, even though he has not had any problems with his current cellmate;

6. Inmate Meeks' recidivist history (he is out of jail now) means he could, someday, violate parole or re-offend and present a specific threat to Plaintiff sometime in the future;

7. Judge Williams' conclusion that there is "no evidence in the record or the letter" from Inmate Couch to suggest he will act on his threats is erroneous;

8. Judge Williams' conclusion that there is no "specific threat … from any inmate" is erroneous;

9. Plaintiff is, despite the fact that he gets along with his current cell-mate, in danger of attack (a rehash of Objection 5);

10. Judge Williams' *legal* conclusion that Plaintiff need show a specific threat to be granted an injunction is erroneous;

11. The "institutional character" of inmates—i.e. their bias against police officers—constitutes a threat specific enough for an injunction to issue;

12. The conclusion that Plaintiff's 8.5 years at Hill Correctional without an assault on Plaintiff undercuts his argument for an injunction is "conjecture;

13. Failure of correctional officers to follow IDOC procedures (that a person requesting protective custody gets it automatically) gives him a "right"—presumably to an injunction; and

14. Simply by being a former police officer, the threat of substantial harm to Plaintiff is high enough for an injunction to issue.

Many of Plaintiff's objections involve factual hair-splitting that offers little to the preliminary injunction analysis. Regarding objections one, two, three, seven and twelve, it is clear that Judge Williams weighed the threat presented by inmate Couch (whose letter to Plaintiff Judge Williams calls "threatening"), and that Plaintiff—because he is a former police officer—has been concerned with his safety throughout his stay in the IDOC. Objection six—that the released Inmate Meeks may someday violate parole, be re-incarcerated with Plaintiff, and assault him, only highlights the speculative nature of the potential injuries Plaintiff seeks to prevent. Likewise, objection four, in which Plaintiff points to his warning to officers that he was at risk from *all* inmates contravenes Judge Williams' finding that Plaintiff never notified staff that Meeks was a danger, is unhelpful: it ignores the fact that Judge Williams *did* consider the threat posed by an inmate population who *may* have known Plaintiff used to be a police officer. As discussed below, the undersigned concludes that Judge Williams gave appropriate weight to the risks Plaintiff faced.

Objections five, eight, nine, ten, and eleven can be characterized as legal objections to the requisite level of specificity Judge Williams applied in his analysis. The objections fail because Plaintiff conflates the specificity necessary to establish an Eighth Amendment violation with the showing required for the issuance of the extraordinary remedy of a preliminary injunction. Plaintiff asserts that he is not necessarily safe now, but Judge Williams acknowledged the same. A preliminary injunction, though, can only issue on a showing—and Plaintiff has the burden—that harm is *likely* to come to him.

Plaintiff is correct in arguing that he need not show a specific threat from a specific inmate in order to establish an Eighth Amendment violation. *See Weiss*, **230 F.3d at 1032 (heightened risk can come from victim's characteristics, not assailant's characteristics).** But his motion

was for preliminary relief, which requires a showing he is likely to succeed on the merits, and that he would likely suffer harm before doing so. The Court can conceive of many ills that *could* befall Plaintiff should no injunction issue, but cannot conclude harm is likely to come to him because the entire inmate population knows of his status as a former police officer. What is clear from the record is Plaintiff can only establish that three inmates (one of whom is no longer incarcerated) knew he used to be a police officer, and that the now-released inmate assaulted him.

Finally, Plaintiff's thirteenth objection—that officials' failure to follow IDOC policy, which requires immediate protective custody for an inmate who seeks it—does not carry the day. Neither state law nor institutional procedures establish federal constitutional boundaries. **See *Tenny v. Blagojevich*, 659 F.3d 578, 583 (7th Cir. 2011); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").** And while failure to follow such a procedure may speak to officials' indifference (deliberate or otherwise), it does not alter that the risk of harm asserted by Plaintiff is too speculative, and based on facts too attenuated, to warrant an injunction. The Court also notes this is Plaintiff's first time raising the IDOC policy, and that an objection to an R&R is an improper vehicle for raising an argument in the first instance. **See *Anna Ready Mix v. N.E. Pierson Constr. Co.*, 747 F.Supp. 1299, 1303 (S.D. Ill. 1990) ("[A]rguments raised for the first time in objections to a magistrate's report ought to be disregarded absent compelling reasons.").**

In short, the undersigned district judge—examining the record *de novo*—concludes that Judge Williams is correct in his assessment of the speculative nature of future harm the Court must weigh against Plaintiff's ultimate chance of success on the merits. Plaintiff's likelihood of success on the merits, weighed against the speculative nature of any potential injury, is too low for an injunction to issue. An injunction here would effectively make protective custody status for inmates known by

anyone to be former police officers a constitutional norm. It may be that Plaintiff is able to earn a permanent injunction by proving his case to a finder of fact, but the Court will adopt Judge Williams' R&R and deny his motion for prospective relief.

## CONCLUSION

For the foregoing reasons, the undersigned **ADOPTS** (**Doc. 33**) the Report and Recommendation filed by Magistrate Judge Stephen C. Williams and **DENIES** (**Doc. 1**) Plaintiff's Motion for TRO/Preliminary Injunction. Plaintiff's Motion for Status (**Doc. 61**) is accordingly **MOOT**.

The deadlines contained in the Trial Practice Schedule (Doc. 41) remain in effect, and a jury trial remains set for June 2015.

The undersigned notes that the last court document sent to Plaintiff was returned to sender. The Court reminds Plaintiff that it is his duty to pursue his case, and that duty includes keeping the Court apprised of his current address. (*See* Doc. 3, 6). Should he fail to do so, the Court will dismiss this action for want of prosecution pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

**DATE:** December 10, 2013          s/ *Michael J. Reagan*
                                    **MICHAEL J. REAGAN**
                                    United States District Judge