## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIS BAIRD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.   13-cv-376-MJR-SCW |
| ) | |
| MARCUS HODGE, ANNE TREDWAY, ) | |
| LT. STAFFORD, OFFICER HARPER, ) | |
| JEFFREY STRUBHART, MICHAEL R. ) | |
| MAUS, DANA DARNOLD, and ) | |
| SANDRA BURKE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Pursuant to 42 U.S.C. § 1983, *pro se* Plaintiff Willis Baird filed his complaint while incarcerated at Lawrence Correctional Center against several defendants for deliberate indifference in failing to protect him from an assault by fellow inmates.   Plaintiff also brought retaliation claims and a claim for deliberate indifference in treating injuries that he received as a result of the assault (Doc. 14).   Plaintiff's Count 1 alleges that Defendants Marcus Hodge, Anne Tredway, Lt. Stafford, Officer Harper, Jeffrey Strubhart, and Sandra Burke were deliberately indifferent in failing to protect Plaintiff from the assault.   Count 2 alleges that Defendant Michael R. Maus wrote a false disciplinary ticket against him in retaliation for Plaintiff writing a grievance against him. Count 3 alleges deliberate indifference to Plaintiff's medical needs against Defendant Dana Darnold for failing to provide him proper medical treatment following the assault and Count 4 alleges that Darnold's failure to provide proper care was done in retaliation

for Plaintiff writing a grievance against her. This matter is before the Court on a motion for summary judgment filed by Defendants Darnold and Burke (Docs. 93 and 94) and a motion for summary judgment filed by Defendants Mike Maus and Anne Tredway (Docs. 96 and 97). The Court will grant both motions for summary judgment.

### FACTUAL BACKGROUND

The events which give rise to the claims in Plaintiff's complaint took place while Plaintiff was housed at Lawrence Correctional Center. Prior to being transferred to Lawrence, Plaintiff was housed at Hill Correctional Center. While at Hill, other inmates learned about his previous employment as an undercover police officer and confronted him (Doc. 14, p. 2). Plaintiff requested protective custody and was separated from the other inmates for two weeks prior to his transfer (Doc. 94-2, p. 16, 40-41). He was then transferred to Lawrence. However, when Plaintiff was transferred to Lawrence, two of the inmates who knew about his past employment were transferred with him, leaving him in fear at Lawrence that they would tell others about his past and put him in further danger of assault (Doc. 14, p. 2; Doc. 94-2, p. 16-17, 46).

Plaintiff transferred to Lawrence on July 11, 2012, and upon arriving was placed in segregation (Doc. 94-2, p. 44). Plaintiff saw Sandra Burke for the first and only time related to his claims against her on July 19 or 20, 2012 (Doc. 94-2, p. 14). Plaintiff is not sure whether he had a cellmate at that time as he was without a cellmate for approximately one week after his transfer (*Id.* at p. 14-15). After that week, inmate Yaphet Castilla was placed in his cell for approximately one week (*Id.* at p. 15, 50, 93).

Plaintiff was then housed with inmate Alvaro Acosta for two months until he was transferred to general population (*Id*. at p. 99).   Plaintiff testified that he had no problems with Acosta, who he called Colombo, and that they got along well (*Id*. at p. 53).

Plaintiff believed that since the individuals who were transferred with him knew about his past as an undercover police officer, that they would tell others in segregation, putting Plaintiff's life in danger (Doc. 94-2, p. 17).   When Plaintiff met with Burke, he voiced his fears for his safety (*Id*. at p. 18).    At the time Plaintiff met with Burke, she was a mental health professional employed by Wexford (Doc. 94-1, p. 2).   Plaintiff did not know if Burke could provide him with protective custody but thought that she could place him in a single cell for mental health crisis reasons (Doc. 94-1, p. 19-20).   But Plaintiff merely asked Burke to be moved out of the cell; he did not ask for mental health crisis watch (*Id*. at p. 20).   Plaintiff did not tell her that he was going to harm himself (*Id*. at p. 107).   He does not recall if he used the words protective custody because he was not sure she could order protective custody for an inmate (*Id*. at p. 98).

During his meeting with Burke, Plaintiff testified that he handed her a grievance (Doc. 94-2, p. 100).   Burke took the grievance although he is not sure that she showed it to anyone (*Id*.).   Burke returned the grievance to Plaintiff and Plaintiff testified that Burke told him she would try to do something (*Id*.).   Plaintiff then turned the grievance in through the normal prison channels (*Id*. at p. 100-101).   Plaintiff admits that at the time he spoke with Burke he did not—nor did he ever have—a "keep separate" list of individuals that he could not be housed with at the prison (Doc. 94-2, p. 48).

Page **3** of **16**

Plaintiff also testified that he wrote letters to Defendant Tredway.   He did not speak with her in person until he saw her after he filed his lawsuit, but he believes that he sent letters to her because he knew that she was a warden (Doc. 94-2, p. 58-59).   He also wrote grievances asking for protective custody (*Id*. at p. 55).   Plaintiff admits that he heard nothing back from Tredway and he does not know if she got the letters or was aware of the danger Plaintiff expressed (*Id*. at p. 88).   Plaintiff also acknowledged that she worked in recreation at the prison, and was not involved in discipline (*Id*.).

After Plaintiff was transferred to general population he was housed with an inmate named Chaunte Meeks.   Meeks assaulted Plaintiff on March 20, 2013 (Doc. 94-2, p. 64-65; Doc. 97-2, p. 1).   Meeks hit Plaintiff on the head with a stool (Doc. 94-2, p. 24). Plaintiff said that Meeks found out on that date that Plaintiff was an ex-police officer and questioned Plaintiff about his police tenure; he attacked him when Plaintiff refused to answer Meeks' questions (Doc. 94-2, p. 23-24, 67).   Plaintiff suffered bumps on his head, a stiff neck, and small lacerations, and he discovered the next day that his nose was broken—he realized then that his nose felt loose when he blew it (Doc. 94-2, p. 25-26).

Defendant Maus was the first officer to arrive at Plaintiff's cell during the altercation (Doc. 94-2, p. 71-72).[1]   He called a 10-10, which was a code for fighting (*Id*. at p. 72-73).   At the time, Plaintiff admits that Meeks still had Plaintiff in a headlock but he had stopped throwing punches (*Id*. at p. 74).   Plaintiff testified that he never threw a

---

[1] At the deposition, Plaintiff referred to Maus as "Moss."

punch at Meeks as Meeks was on top of Plaintiff (*Id*. at p. 79).   Plaintiff was issued a ticket for fighting, as Maus saw him try to hit Meeks in the head with his fist (*Id*. at p. 75-76; Doc. 97-2, p. 1-2).   Plaintiff was found guilty of the charge and lost fifteen days good conduct credit (*Id*. at p. 76-77; Doc. 97-2, p. 2-3).   The ticket was never expunged (*Id*. at p. 77).   Plaintiff believes Maus lied about Plaintiff's role in the altercation because Plaintiff wrote a grievance against him two weeks before the altercation (*Id*. at p. 79).

After the fight between Plaintiff and Maus, Plaintiff was taken to the healthcare unit and seen by Nurse Darnold (Doc. 94-2, p. 27).   Plaintiff complained of pain in his head and neck (*Id*. at p. 28).   Darnold conducted an exam of Plaintiff's head and neck and found nothing wrong with Plaintiff (Doc. 94-2, p. 28).   Darnold noted full range of motion in the neck and head, and no visible injuries (Doc. 94-1, p. 2; 94-3, p. 1-2). Plaintiff indicated that the exam was not thorough (*Id*. at p. 29).   Darnold testified that, while she noted no injuries, she informed Plaintiff that he should return to the healthcare unit if he experienced any further health problems (Doc. 94-1, p. 2).

Plaintiff testified that he suffered from small cuts on his face; cuts on his shoulder, arms, and legs; and a broken nose.   He admitted that Darnold would not have seen the small cuts on his face as his hair was long and hid the cuts (Doc. 94-2, p. 30).   Plaintiff did not realize his nose was broken at the time that he met with Darnold, as he did not realize he had been hit in the nose (Doc. 94-2, p. 26-27).   Plaintiff also testified that he later discovered cuts on his shoulder, legs, and arms, but he did not notice those until a couple of days after meeting with Nurse Darnold (*Id*. at p. 95-96).   At the time Plaintiff

met with Darnold, he only complained about his head and neck being stiff; he did not notice the bumps on his head until the next day (*Id*. at p. 96-97).

Plaintiff testified that he believed that Darnold would not provide him with a thorough examination because she wanted to protect the officers, as Plaintiff was telling officers in the healthcare unit with him that he had requested protective custody and then was assaulted (Doc. 94-2, p. 10, 33).   Plaintiff stated that he had previously written a letter to Wexford, as well as a grievance, about Darnold because he had previously been assaulted and she had only provided him with Advil (Doc. 94-2, p. 35).   He did not know if she knew about the letter at the time that she examined him (*Id*.).   He also admitted that he just guessed that her actions were done out of retaliation (*Id*. at p. 36).

Plaintiff did not put in a further sick call request after being seen by Darnold (Doc. 94-2, p. 32).   He also never saw Darnold after his first meeting with her directly after the fight (*Id*. at p. 97).   He testified that he never got treatment for his broken nose and only later complained to someone else, not Darnold, about his nose (*Id*.; Doc. 94-3).

## LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   ***Dynegy Marketing & Trade v. Multiut Corp.,*** **648 F.3d 506, 517 (7th Cir. 2011) (***citing*** FED. R. CIV. P. 56(a)).**   A fact is material if it is outcome determinative under applicable law, and a genuine issue of material fact exists

if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 248 (1986).**

The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and the other information submitted—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* **477 U.S. 317, 323 (1986).** After a proper motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* **477 U.S. at 250 (***quoting* **FED. R. CIV. P. 56(e)(2)).** A mere scintilla of evidence in support of the nonmovant's petition is insufficient; a party will be successful in opposing the motion when he presents definite, competent evidence to rebut the motion. *Szymanski v. Rite-Way Lawn Maintenance Co., Inc.,* **231 F.3d 360, 364 (7th Cir. 2000).**

On summary judgment, the Court considers the facts in the light most favorable to the non-movant, and adopts reasonable inferences and resolves doubts in the non-movant's favor. *Srail v. Vill. of Lisle,* **588 F.3d 940, 948 (7th Cir. 2009).** Even if the material facts are not in dispute, summary judgment is inappropriate when the information before the Court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull,* **371 F.3d 928, 935 (7th Cir. 2004),** *abrogated on other grounds by Spiegla II,* **481 F.3d at 966 (7th Cir. 2007).**

### B.  Failure to Protect

In order to prevail on a failure to protect claim, a plaintiff must clear two hurdles. First, the inmate must show that "he is incarcerated under conditions posing a

substantial risk of serious harm." *Farmer v. Brennan*, **511 U.S. 825, 834, 114 S. Ct. 1970 (1994).**  This means that the inmate must show that, prior to the incident, there was a substantial risk that harm might occur.  *Brown v. Budz*, **398 F.3d 904, 910 (7th Cir. 2005)**.  The courts have found that an inmate who is assaulted by other inmates has experienced a substantially serious harm.  *Id.*  Second, the inmate must show deliberate indifference to that risk.  *Weiss v. Cooley*, **230 F.3d 1027, 1032 (7th Cir. 2000).**  Indifference can exist when custodians fail to protect a prisoner from a specific threat or when officials fail to take "appropriate steps" despite knowing of a victim's particular vulnerability.  *Whaley v. Erickson*, **339 F. App'x 619, 622 (7th Cir. 2009).**  At the end of the day, conduct that amounts to negligence or inadvertence is not enough to state a failure to protect claim.  *Pinkston v. Madry*, **440 F.3d 879, 889 (7th Cir. 1996).**

## C.  Retaliation

An official who retaliates against a prisoner because that prisoner filed a grievance violates the prisoner's First Amendment rights.  *DeWalt v. Carter*, **224 F.3d 607, 618 (7th Cir. 2000).**  Establishing a claim of retaliation requires a prisoner to show that he engaged in a protected activity; that he suffered a deprivation likely to prevent future protected activities; and that there was a causal connection between the two.  *Watkins v. Kasper*, **599 F.3d 791, 794 (7th Cir. 2010).**  Even in the face of that proof, a defendant can still prevail if he shows that the offending action would have happened even if there had been no retaliatory motive, i.e. that "the harm would have occurred anyway."  *Mays v. Springborn*, **719 F.3d 631, 634-35 (7th Cir. 2013).** At summary

judgment, "mere speculation" by the plaintiff is insufficient to carry his burden. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co.*, **544 F.3d 752, 757 (7th Cir. 2008).**

### D. Deliberate Indifference to Medical Needs

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishment" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, **414 F.3d 645, 652–53 (7th Cir. 2005).** A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm, but not to demand specific care. *Forbes v. Edgar*, **112 F.3d 262, 267 (7th Cir. 1997).**

To prevail on a deliberate indifference claim, a prisoner must satisfy a two-part test. *Arnett v. Webster*, **658 F.3d 742, 750 (7th Cir. 2011).** The first prong looks at whether the prisoner has shown that he has an objectively serious medical need. *Id.* A condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary infliction of pain if not treated. *Gayton v. McCoy*, **593 F.3d 610, 620 (7th Cir. 2010).** Only if the objective prong is satisfied is it necessary to analyze the second prong, which focuses on whether a named defendant's state of mind was sufficiently culpable. *Greeno*, **414 F.3d at 652–53.**

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Id.* The plaintiff need not show that the physician literally ignored his complaint, just that the physician was aware of the serious condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, **546 F.3d 516, 524 (7th Cir.**

2008).   Courts give deference to physicians' treatment decisions, since "there is not one proper way to practice medicine, but rather a range of acceptable courses." *Jackson v. Kotter*, 541 F.3d 688, 697–98 (7th Cir. 2008).   A doctor who chooses one routine medical procedure over another does not violate the Eighth Amendment. *McGowan v. Hulick*, 612 F.3d 636, 641 (7th Cir. 2010).   However, persisting in a course of treatment known to be ineffective states a claim under the Eighth Amendment. *Greeno*, 414 F.3d at 655. Indifference may also be shown when a provider refuses to refer a patient to a specialist for treatment of a painful condition that clearly requires a referral. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Snyder v. Hayes*, 546 F.3d 516, 526 (7th Cir. 2008).

### ANALYSIS

As Plaintiff has not filed a response, the Court will deem the facts as presented by the Defendants to be uncontroverted. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995).   That is not the end of the matter, though.   If the uncontroverted facts could support a finding that Defendants failed to protect Plaintiff, retaliated against him, or were deliberately indifferent to his medical needs, then summary judgment is not appropriate.   *Flynn*, 59 F.3d at 288.

### A.  Dana Darnold

Defendant Darnold argues that she is entitled to summary judgment on Plaintiff's deliberate indifference claim and his retaliation claim.   Plaintiff's complaint alleges that Darnold was indifferent in addressing Plaintiff's injuries directly after his assault and that she did not properly address his injuries out of retaliation.

The Court finds no evidence of deliberate indifference.   The evidence before the Court shows that Darnold saw Plaintiff only once, directly after his altercation with Meeks, on March 20, 2013.   Plaintiff complained only that he had a stiff neck and head and Darnold examined Plaintiff, noting no injuries.   The medical records indicate that he had full range of motion in his neck and head (Doc. 94-3, p. 1; 94-1, p. 2).   Plaintiff did not complain of any other injuries and did not notice the cuts on his shoulder, arms, and legs until a couple of days after meeting with Darnold.   He further admitted that the cuts on his face would not have been visible to Darnold given the length of his hair at the time.   While Plaintiff testified that he did suffer from a broken nose, Plaintiff indicated that he was not aware of the broken nose at the time that he was examined by Darnold and did not complain of pain in his nose.   He only noticed the next day that his nose felt loose when he blew it, but he admits that he did not speak with Darnold at any time after the examination on March 20, 2013.   While Plaintiff alleges that Darnold should have conducted a more thorough examination, Plaintiff admits that she examined his head and neck and noted no injuries.   Plaintiff also did not voice any other complaints that would make Darnold aware of the other injuries Plaintiff alleges that he suffered and Plaintiff admits that he did not identify the injuries until later.   Darnold informed Plaintiff to return to the sick call if he had any other problems, but Plaintiff admits that he did not see Darnold after his initial encounter with her.   The evidence before the Court clearly shows that Darnold adequately examined Plaintiff for injuries after the assault; looked into his head and neck stiffness (the only injuries he complained of at the

time); and did not ignore any other complaints of pain by Plaintiff.

Nor does the Court find any evidence of retaliation on Darnold's part.   Plaintiff argues that Darnold provided him with inadequate care out of retaliation for filing a grievance against her.   The Court first notes that it finds no evidence of inadequate treatment on Darnold's part.   Nor has Plaintiff presented any evidence of retaliation. Although Plaintiff stated that he filed a grievance against Darnold, he does not indicate when that grievance was written or whether Darnold was aware of the grievance.   He also testified that he wrote a letter to her employer, presumably Wexford, but admitted that he did not know if Darnold was aware of the letter.   Further, he testified at his deposition that Darnold provided him inadequate care because she was trying to protect the prison guards who failed to grant him protective custody.   He has pointed to no evidence to show that Darnold sought to retaliate against him, other than his own speculation.   That's not enough at summary judgment. *Springer v. Durflinger*, **518 F.3d 479, 484 (7th Cir. 2008).**   As there is no evidence of retaliation, the Court finds that Darnold is entitled to summary judgment on Plaintiff's retaliation claim against her.

### B.  Sandra Burke

Defendant Burke argues that she is entitled to summary judgment on Plaintiff's failure to protect claim against her.   The evidence before the Court indicates that Plaintiff only spoke to Burke on one occasion, shortly after he was transferred to Lawrence, then asking to be removed from his cell to a safer place.   At the time he spoke with Burke, Plaintiff testified that he was housed in segregation and was either alone or

housed with inmate Castilla.   He admits that Burke was a mental health worker and could not grant Plaintiff protective custody.   While she could move him to a separate cell for mental health purposes, Plaintiff admits that he did not ask her to move him for mental health reasons, did not tell her that he was having a mental health crisis, and did not indicate that he would harm himself if he was not moved.

Here, the Court finds no evidence of deliberate indifference on Burke's part.   It is unclear whether Plaintiff was alone in his segregation cell or whether he was housed with inmate Castilla when he spoke with Burke.   If he was alone in his cell when he spoke with Burke, there is no evidence that he was facing a substantial risk of harm, as he was not housed with any other inmates that could pose a threat to him.   And if Plaintiff was housed with inmate Castilla, there is no evidence of a risk at all, imminent or otherwise.   There is no evidence that Castilla knew that Plaintiff was a police officer or posed a threat to Plaintiff, and in fact Plaintiff was only in a cell with Castilla and never had any problems with him or his next cellmate, Acosta.   According to Plaintiff, he and Acosta were good friends and had no issues while they were housed together.   It was only when Plaintiff was moved to general population some nine months later that Plaintiff was assaulted by another cellmate.   Thus, there is no evidence that he was under imminent danger at the time that he spoke with Burke.

Further, Burke was a mental healthcare worker who Plaintiff admits did not have the power to grant Plaintiff protective custody.   The evidence before the Court is that Plaintiff spoke with Burke only on one occasion and asked to be moved because of his

fear that others would harm him due to their knowledge that he was a police officer. While Burke could separate Plaintiff from other individuals and put him on a mental health crisis watch, Plaintiff testified that he did not tell her that he was having a mental health crisis, nor did he indicate that he wanted to be placed on a watch or that he was planning on hurting himself.   Burke also indicated to Plaintiff that she would look into the matter and there is evidence that even though Plaintiff did not speak to Burke again, Plaintiff's cellmate, Castilla, was moved a week after he was placed in the cell.   There is no evidence that she acted with deliberate indifference in not placing Plaintiff in a separate cell as she was a mental healthcare worker who could only move Plaintiff to a mental health crisis cell and Plaintiff did not indicate that he was having a mental health issue requiring a crisis cell.   Thus, the Court finds no evidence of deliberate indifference on Burke's part. as the threat to Plaintiff at that time was not imminent and, as a mental healthcare worker, she could not grant Plaintiff protective custody.

## C.  Mike Maus

Defendant Maus argues that Plaintiff's retaliation claim against him is barred by the doctrine established in *Heck v. Humphrey*, **512 U.S. 477 (1994).**   In *Heck*, the Supreme Court stated that a prisoner's § 1983 is not cognizable if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."   *Id.* **at 487.**   Thus, a prisoner's claim for damages is barred unless the prisoner can demonstrate that the underlying conviction or sentence has previously been invalidated.   *Id.*   The *Heck* doctrine has been extended to civil rights claims arising out of prison disciplinary

hearings.  *Burd v. Sessler*, **702 F.3d 429, 434 (7th Cir. 2012).**

Here, Plaintiff's claim of retaliation against Maus is barred by *Heck*.  Plaintiff argues that he was issued the disciplinary ticket for fighting in retaliation for previously filing a grievance against Maus.   Plaintiff specifically argues that Maus' statements that he saw Plaintiff throw a punch was a lie as Plaintiff never threw a punch and that Maus falsified the disciplinary ticket out of retaliation for Plaintiff's previous actions against him.   To find that Maus falsified the disciplinary ticket would necessarily imply the invalidity of the disciplinary ticket and the finding of guilt against him on that ticket.  That ticket has never been expunged.   As such, the Court finds that Plaintiff cannot bring his retaliation claim against Maus as it is barred by *Heck*.

### D.  Anne Tredway

Defendant Tredway also argues that she is entitled to summary judgment on Plaintiff's failure to protect claim.   Here, the Court finds no evidence that Tredway was aware of a specific threat to Plaintiff's safety.   While Plaintiff testified that he sent one correspondence to Tredway, he admitted that he did not know if she received the grievance.   He said that he only talked to Tredway after he filed his complaint in this case.   While Tredway was a warden, Plaintiff admitted that she was only a warden over recreation and he was not sure that she dealt with protective custody issues or would have seen any of the grievances he wrote.   There is no evidence that Tredway had knowledge of the risk to Plaintiff and Plaintiff even admitted that he did not believe Tredway was liable in the way that others who had knowledge of Plaintiff's custody

requests were liable for failing to protect him (Doc. 94-2, p. 88-89).   As there is no evidence that Tredway was aware of Plaintiff's requests, the Court finds that she is entitled to summary judgment as to Plaintiff's failure to protect claim.

CONCLUSION

The Court finds that Anne Tredway, Mike Maus, Sandra Burke, and Dana Darnold are entitled to summary judgment and **GRANTS** both motions for summary judgment (Docs. 93 & 96).   The only claim which remains for trial is Plaintiff's failure to protect claim against Defendants Hodge, Stafford, Harper, and Strubhart.

**IT IS SO ORDERED.**

**DATED:   March 24, 2016**

/s/ **Michael J. Reagan**
**Chief Judge Michael J. Reagan**
**United States District Court**